# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**GOOD HOPE, INC.**                                                                    **PLAINTIFF**

**VERSUS**                                    **CIVIL ACTION NO. 5:07-CV-00197KS-JMR**

**JAMES P. WESTLAKE, INDIVIDUALLY AND**
**STEVE BOLIN, INDIVIDUALLY AND D/B/A**
**BMW DISASTER RELIEF, INC.**                                   **DEFENDANTS**

**VERSUS**

**CONNER HOUSE, INDIVIDUALLY**                             **COUNTER-DEFENDANT**

## **MEMORANDUM OPINION AND ORDER**

This matter is before the court on Motion for Summary Judgment **[#37]** filed on behalf of the individual defendants, Steve Bolin and James P. Westlake. The court, having reviewed the motion, the responses, the pleadings and exhibits on file, the briefs of counsel, the authorities cited, and being otherwise fully advised in the premises, finds that motion is well taken and should be granted. The court specifically finds as follows:

## **FACTUAL BACKGROUND**

Following Hurricanes Wilma and Katrina, the defendants, James P. Westlake and Steve Bolin acting on behalf of BMW Disaster Relief, Inc. ("BMW") entered into discussions with Conner House of Good Hope, Inc. to jointly conduct clean-up operations in Mississippi and Florida. Although apparently nothing was ever reduced to writing, BMW and Good Hope ultimately commenced these clean-up operations at

similar locations with BMW's crews working some jobs and Good Hope's working others.  After each corporation incurred expenses, paid subcontractors, etc., there was apparently a disagreement over who owed whom money.  The defendants contend that after lengthy discussions about the situation, Steve Bolin tendered a check on October 26, 2006 on behalf of BMW to House and Good Hope in the amount of $30,000 as an alleged full and final settlement of the matter.  Disagreeing that this payment was a full and final payment, on September 19, 2007, Good Hope, Inc., filed its complaint against James P. Westlake and Steve Bolin, individually doing business as BMW Disaster Relief, Inc. to collect the money allegedly owed to it in the Circuit Court of Adams County, Mississippi.  On October 16, 2007, the defendants removed the case to this court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.   The plaintiff later amended his Complaint to add BMW as a defendant and the defendants counter-sued Conner House individually for breach of the alleged settlement agreement.  The individual defendants, Bolin and Westlake, have now moved for summary judgment.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is

bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the

non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  The nonmoving party's response, by affidavit or otherwise, must set forth specific facts

showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **ANALYSIS**

Bolin and Westlake allege that they were at all times relevant to this case acting as agents for BMW and that all invoices for monies allegedly owed were sent by Good Hope to BMW, not to either of them individually. There is no evidence in the record that at any time did either Bolin or Westlake personally guarantee anything in connection with the projects that are the subject of this lawsuit or the payments due in regard to same. As such, the defendants contend that there can be no personal liability as to either Bolin or Westlake and that they are entitled to summary judgment as to the claims asserted by Good Hope against them individually.

This is a diversity action and, therefore, this court is bound to apply the law of the forum state. *Erie Railroad Co. v Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This includes Mississippi's conflict-of-law rules. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Mississippi, a choice of laws dispute does not arise unless there is a true conflict between the laws of two

states having an interest in an aspect of the litigation. *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006) (quoting *Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1038 (Miss. 1985)).

The possibility of a conflict of law arises because Good Hope is a Mississippi Corporation and some of the contractual clean-up work occurred here; BMW is (or was) an Arkansas Corporation and Bolin and Westlake are Arkansas residents; the alleged oral contract was discussed and possibly formed in Louisiana and/or Florida with phone discussions including Bolin and Westake located in Arkansas; and some of the contractual clean-up work occurred in Flordia. However, the parties agree and the court concurs that there is no conflict of law concerning the principles of piercing the corporate veil which governs the present analysis between any of the states having an interest in this suit, including Mississippi, Arkansas, Louisiana and Florida. *See, A & L, Inc. v. Grantham,* 747 So.2d 832, 843 (Miss.1999); *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 935 (8th Cir.1999); *Industrias Magromer Cueros y Pieles S.A. v. Louisiana Bayou Furs Inc.*, 293 F.3d 912, 920 (5th Cir. 2002); and *House of Koscot Development Corp. v. American Line Cosmetics, Inc.*, 468 F.2d 64, 66 (5th Cir. 1972). Thus, the court's analysis will concentrate on the application of Mississippi law.

In Mississippi:

> [T]o pierce the veil of a corporation, the party seeking to impose liability on the corporation's shareholders must demonstrate: "(a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder."

*Berhow v. The Peoples Bank*, 423 F.Supp.2d 562, 566 (S.D. Miss. 2006)(quoting *Gray*

*v. Edgewater Landing, Inc.*, 541 So.2d 1044, 1047 (Miss.1989)). *See also Tupelo Mfg. Co., Inc. v. Cope Industries, Inc.*, 2006 WL 924036, *4 (N.D. Miss. 2006) ("In Mississippi, the [corporate] veil may be pierced when 'separate personalities of the corporation and the shareholder no longer exist, and adherence to the fiction of separate corporate existence would, under the circumstances, sanction a fraud or promote injustice....'")(quoting *A & L, Inc. v. Grantham*, 747 So.2d 832, 843 (Miss. 1999)). However, "courts do not take piercing of the corporate veil lightly because of the chilling effect it has on corporate risk-taking." *Id.* (citing *Nash Plumbing, Inc. v. Shasco Wholesale, Inc.*, 875 So.2d 1077, 1082 (Miss.2004). As such, piercing the veil is regarded as an extraordinary remedy, and is one that is to be exercised with great caution. *See, e.g., King's Daughters and Sons Circle Number Two of Greenville v. Delta Regional Medical Center*, 856 So.2d 600 (Miss. App. 2003).

The defendants alleged that no fraud or wrongdoing is alleged on the part of either Westlake or Bolin in this case. Westlake asserts that he was simply heading up a BMW crew working in Louisiana when he and House began discussing combining BMW and Good Hope crews to handle clean-up operations in Florida. Thus, the defendants contend that irrespective of whether these negotiations ever resulted in an enforceable contract (which the defendants deny), it is clear that both House and Westlake were acting on behalf of their respective companies and any such contract would have been formed between BMW and Good Hope.

It is unrefuted that BMW was an ongoing business throughout the relevant time frame. The corporation was registered with the Arkansas Secretary of State and had a

separate checking account. BMW paid employees, subcontractors and other creditors to whom legitimate debts were owed through this account and filed tax returns. Therefore, the defendants argue that appropriate corporate formalities were observed. *See Rosson v. McFarland*, 962 So.2d 1279, 1287 (Miss. 2007) (Separate checking account, tax returns, and registration with Secretary of State evidence that corporate formalities have been observed.).

Good Hope claims in its response that "its legitimate expectations were frustrated by not receiving compensation for debris removal work performed in Florida. The defendants claim this misses the point. Indeed, in his deposition, Conner House admits that he knew he was dealing with BMW and not Bolin or Westlake individually when he negotiated to combine work crews and perform the clean-up. There is no proof that either Westlake or Bolin ever personally guaranteed anything in connection with this alleged joint venture between BMW and Good Hope. Whether or not there is even an oral contract capable of enforcement is an issue yet to be resolved. If such a contract exists, it is binding on only BMW from the facts presented, and not Bolin or Westlake individually.

Good Hope cites to the Northern District decision of *Foamex, L.P. v. Superior Products Sales, Inc.*, 361 F. Supp.2d 576 (N.D. Miss. 2005) for the proposition that frustration of expectations can be found simply by evidence of a debt and by a principal of the corporation's efforts to pay that debt personally. It contends that Bolin's payment of the $30,000 (alleged by BMW to be the settlement) from another of his companies to Good Hope is such evidence. However, the plaintiff misreads *Foamex* because the judge ultimately concluded that the individual's payment of the corporate debt was

laudable conduct. While certainly not evidence of a failure to follow corporate formalities, the plaintiff's argument that this payment is proof of a failure to observe corporate formalities is stronger, but still unavailing as set forth below. Nevertheless, Good Hope fails to offer a dispute as to any proof of the first prong of frustration of contractual purpose by either Bolin or Westlake, individually.

Good Hope points to loans made by Steve Bolin personally and from other companies owned by him as evidence that corporate formalities were not observed. Bolin explained in his deposition that he would loan BMW money at times when the company was waiting on payments from contractors and others and that BMW would repay the loans when proceeds were received. He also indicated that the payments from BMW to his logging company either represented payments for grinding done on the jobs by that company or repayment of loans from that company. Westlake and other employees also received payments from BMW which Good Hope has questioned. However, the testimony establishes that these payments reflect salaries properly paid to employees of the company.

Good Hope also contends that certain wire transfers out of the company account may have made fraudulently to deprive BMW's creditors from collecting money owed. The defendants have characterized this assertion as rank speculation on the part of Good Hope, and the court agrees. Good Hope has produced no evidence whatsoever that these wires were anything other than what Bolin testified they were, i.e, loans to BMW from other companies and repayments of same. There is no evidence that any creditors were ever defrauded and the checks attached as Ex. "D" to the defendants' memo in support of their original motion as well as BMW's bank statements and tax

returns and the relevant testimony of the parties all indicate that debts actually owed by the company were satisfied. There is simply no evidence to suggest that any of the loans to BMW and repayments from BMW, the salary payments or the wire transfers were made or used to hide assets, inflate books or anything else improper.

Good Hope has failed to offer proof of any dispute as to a genuine issue of fact as to any of the required factors to pierce the corporate veil of BMW in order to hold either Bolin or Westlake individually liable. Theses defendants are entitled to summary judgment and dismissal.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#37]** filed on behalf of the individual defendants, Steve Bolin and James P. Westlake is granted and the plaintiff's Complaint as to these two defendants is dismissed with prejudice. A separate judgment shall be entered in accordance with Rule 58, Federal Rules of civil Procedure.

SO ORDERED AND ADJUDGED this the 9th day of December, 2008.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE